UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

DEMETRIUS PURDUE,

                Defendant.

**DECISION AND ORDER**

14-MJ-2066

---

## I) INTRODUCTION

Pending before the Court is a motion (Dkt. No. 10) by defendant Demetrius Purdue ("Purdue") for pretrial release on conditions including electronic monitoring. Purdue had withdrawn his argument for bail because he could not propose a residence that the United States Probation Office ("USPO") would approve. Purdue argues now that he could live with a friend who has no criminal record and is employed. Purdue also offers that he would be willing to submit to electronic monitoring and to conditions relating to substance abuse treatment and obtaining employment. The Government and the USPO oppose release given the nature of the charges, Purdue's possible gang affiliation, and Purdue's criminal history including one bail and one probation violation.

The Court held an initial detention hearing on July 10, 21, and 24, 2014, and heard argument on the pending motion on August 1, 2014. For the reasons below, the Court denies Purdue's motion.

## II) BACKGROUND

This case concerns allegations that Purdue bought a handgun with a defaced serial number and tried to hide it from police. According to the complaint (Dkt. No. 1) and exhibits from the preliminary hearing, Buffalo police spotted Purdue while on routine patrol on June 27, 2014. Police officers allegedly saw Purdue standing in the driveway of 36 Sweeney Street in Buffalo. Purdue was carrying a white T-shirt in his right hand. When Purdue saw the police, he walked up the driveway and disappeared from the officers' sight for about two seconds. When Purdue walked back down the driveway, he no longer had the T-shirt in his hand. Officers found the disappearance of the T-shirt suspicious and investigated. Officers eventually found the T-shirt on the roof of 36 Sweeney Street, with a loaded handgun in it. The handgun had a defaced serial number.

The next series of events pertained to Purdue's arrest. Officers arrested Purdue and advised him of his *Miranda* rights. Purdue allegedly made statements to the effect that someone named Paul sold him the handgun for $350. Purdue did not pay Paul right away, but Paul apparently trusted Purdue to pay him at some point. Purdue also allegedly conceded that he hid the handgun in the white T-shirt that officers found and that he threw the T-shirt with the gun on the roof of the house.

The alleged events of June 27, 2014 generated criminal charges both locally and here. Officers filed a felony complaint in Buffalo City Court charging

2

Purdue with criminal possession of a weapon in the third and the second degree, in violation of New York Penal Law §§ 265.02(3) and 265.03(3), respectively. Purdue has posted a $25,000 bond with respect to the local charges.  Here, this Court signed a complaint charging Purdue with possession of a firearm that had a defaced serial number, in violation of 18 U.S.C. § 922(k).

This case has run through standard pre-indictment proceedings.  Purdue's initial appearance occurred on July 10, 2014, as did the beginning of his detention hearing.  Purdue underwent a mental health evaluation from Horizon Corporation; the report consisted of self-reporting and led to a diagnosis of adjustment disorder with observations pertaining to brain injury.  During Purdue's detention hearing, continued across three dates, the Court directed the USPO to investigate Purdue's mother's residence as a possible place where he could stay. The USPO did not approve that residence because Purdue's father did not want him there, to prevent contact with Purdue's 12-year-old sister, who lives there. Without a residence to propose, Purdue withdrew his opposition to the Government's detention motion while reserving his rights.  The Court ordered Purdue detained as a flight risk but without prejudice.  The Court also held a preliminary hearing on August 1, 2014.  At the end of the hearing, the Court found probable cause to believe that a violation of 18 U.S.C. § 922(k) occurred

Case 1:14-cr-00152-RJA-HBS   Document 13   Filed 08/04/14   Page 4 of 9

on June 27, 2014.  The Court ordered Purdue held for a maximum of 30 days for either grand jury action or some other disposition.

Purdue filed the pending motion on July 30, 2014 and argued it after the preliminary hearing on August 1, 2014.  In support of the motion, Purdue attacks the strength of the evidence by arguing that no witnesses saw Purdue buy the handgun in question.  Purdue notes further that a total of eight individuals were at the scene when police arrived, and that five of them fled.  Purdue also emphasizes that the Government has not accused Purdue of using the handgun in question or threatening anyone with it.  As for other bail factors, Purdue argues that he is a lifelong resident of Buffalo and had lived his entire life in his parents' house.  Purdue is still recovering from multiple gunshot wounds that he suffered last fall.  Finally, Purdue now has another residence to propose, the residence of a friend of his who has no criminal record, holds two part-time jobs, and attends college part-time.  Purdue's friend has a roommate who also has no criminal record and is employed.  Purdue argues that he would be amenable to electronic monitoring, substance abuse treatment, and employment requirements if the Court released him.

The Government opposes the pending motion.  The Government has proffered that Purdue is a member of a street gang called the Guilford Gang. The Government also questions Purdue's motives for obtaining the handgun in

4

question, given his gang affiliation, his prior gunshot wounds, and his willingness to hide the handgun from police. The Government downplays the relatively benign nature of the Horizon mental health evaluation by noting that it rested on self-reporting. Finally, the Government notes that Purdue has violated some kind of pretrial or post-conviction release twice before and has three prior convictions in his criminal history.

**III) DISCUSSION**

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.' U.S. Const. amend. VIII. Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Statutory factors to be considered when assessing flight or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to flight risk, "the government carries a dual burden in seeking pre-trial detention.  First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight.  Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court."  *Sabhnani*, 493 F.3d at 75 (citations omitted).  "To order detention, the district court must find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence.  The rules of evidence do not apply in a detention hearing.  Further, the government may proceed by proffer."  *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).

Here, defense counsel has presented Purdue's arguments well, but several factors weigh in favor of continued detention at this time.  Purdue faces a serious charge in federal court of possessing a handgun with a defaced serial number.  Perhaps the strength of the evidence will change after motion practice.  For now, though, Purdue acquired a handgun essentially on consignment, which might suggest haste; and the handgun had a defaced serial number, which suggests evasion; and he tried to hide the handgun, which suggests both evasion and an awareness that possessing the handgun might be a problem.

6

These circumstances together make Purdue's conduct and motives suspicious. As for criminal history, Purdue again has three prior convictions in addition to the charges that he is facing both here and in Buffalo City Court. One of his prior convictions was for criminal possession of a loaded firearm. Purdue received a sentence of probation for that conviction but then violated probation, albeit on an unspecified technicality. Purdue was released on bail once before for one of his other criminal cases and was rearrested while on bail. *Cf. U.S. v. Hendon*, No. 08-CR-172, 2009 WL 2912906, at *2 (E.D. Wis. Sept. 10, 2009) (denying reconsideration of bail in part because "Defendant also has a serious prior record, and while he may not have previously served prison time, he does have convictions for escape and bail jumping."); *U.S. v. Barnett*, No. 5:03-CR-243, 2003 WL 22143710, at *12 (N.D.N.Y. Sept. 17, 2003) ("Every sentence of probation or parole requires a defendant to meet judicially imposed conditions, and violations of either are further evidence of a defendant's inability to comply with judicial mandates and supervision. Evidence of new criminal behavior while other charges are pending inevitably leads to the conclusion that a defendant places his own self-interests above that of the community. In turn, the community has a right to expect courts to protect it."). Purdue's criminal history, particularly the bail and probation violations, indicates an unwillingness to abide by conditions of release that offsets his local ties. *Cf. U.S. v. Griffin*, No. CR09-

7

3018, 2009 WL 1220262, at *3 (N.D. Iowa May 4, 2009) ("While Defendant has long ties to the northeast Iowa area, he is currently unemployed. Defendant has an extensive prior criminal record, both as a juvenile and as an adult. Importantly, Defendant has consistently shown that he is unable or unwilling to comply with conditions of release."); *U.S. v. Roman-Monroy*, 608 F. Supp. 2d 86, 88 (D.D.C. 2009) (ordering detention in part because of a bail jumping conviction).

Under these circumstances, and without infringing on the presumption of innocence, Purdue has demonstrated a willingness to engage in evasive conduct and a willingness to repeat dangerous conduct. The Court accordingly finds a flight risk by a preponderance of the evidence and a danger by clear and convincing evidence. If subsequent developments in the case generate a change of circumstances then the Court will consider a request for reconsideration.

## IV) CONCLUSION

For all of the foregoing reasons, the Court denies Purdue's bail motion (Dkt. No. 10). Purdue shall remain in custody pending trial.

Purdue shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, Purdue shall be afforded reasonable opportunity for private consultation with counsel.  Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which Purdue is confined shall deliver Purdue to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order shall be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

\_\_/s Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: August 4, 2014